**SIGNED this 02nd day of September, 2008.**

```
                    _____
                          FRANK R. MONROE
                    UNITED STATES BANKRUPTCY JUDGE
```
_____


```
                    UNITED STATES BANKRUPTCY COURT
                      WESTERN DISTRICT OF TEXAS
                           AUSTIN DIVISION

IN RE:                              )
                                    )
SPILLMAN DEVELOPMENT GROUP, LTD.    ) CASE NO. 05-14415-FM
                DEBTOR              ) (Chapter 7)
_____)_____
                                    )
SPILLMAN INVESTMENT GROUP, LTD.,    )
STEPHEN W. GURASICH, JR.,           )
DONALD C. WALDEN, ROBERT H. WEST,   )
MORTON L. TOPFER, ALAN TOPFER,      )
AND RICHARD TOPFER                  )
                    PLAINTIFFS      )
VS.                                 ) ADVERSARY NO. 08-1018
                                    )
AMERICAN BANK OF TEXAS,             )
RONALD E. INGALLS, TRUSTEE,         )
AND FIRE EAGLE, LLC                 )
                    DEFENDANTS      )
                                    )
RONALD E. INGALLS, TRUSTEE,         )
     Third-Party Plaintiff          )
                                    )
VS.                                 )
                                    )
PALISADES DEVELOPERS, LTD.,         )
     Third-Party Defendant          )
```

1

**MEMORANDUM OPINION**

This adversary proceeding was instituted by the Plaintiffs seeking a determination of the legal effect of a sale of certain of the Debtor's estate's assets in open court pursuant to Final Order of this Court entered in the primary case in which this adversary pends. Specifically, Plaintiffs seek a determination as to the extent to which, if any, certain guarantees of the individual Plaintiffs and a certificate of deposit pledged by Spillman Investment Group, Ltd. still secure the first lien indebtedness against the assets sold. This debt was held on the Petition date by American Bank of Texas, but as of the date of the sale, November 30, 2006, had been purchased by and transferred to Fire Eagle LLC, the holder of an additional second lien indebtedness against the assets sold.

Plaintiff Spillman Investment Group, Ltd. alleges it had pledged a certificate of deposit in the amount of $1,200,000.00 to American Bank of Texas as collateral for the first lien debt and seeks a ruling by this Court that the effect of Fire Eagle LLC's $9.3 million credit bid was to fully pay the first lien indebtedness it had purchased from American Bank of Texas and that the certificate of deposit it had placed as security for that debt should now be released back to it.

Plaintiffs Gurasich, Walden, West, and the three Topfers allege they were guarantors of the first lien debt which Fire Eagle LLC bought from American Bank of Texas and seek a ruling that the legal effect of the credit bid sale to Fire Eagle was that the first lien indebtedness was fully paid and that their guarantees should be determined to be released and ordered returned to them.

The foregoing relief is sought under the Federal Declaratory Judgment Law as is contained in 28 U.S.C. § 2201-2202.

The Complaint also contains a request for the same rulings plus attorney's fees under § 37.009 of the Texas Civil Practice and Remedies Code. The allegation is that such relief has also been requested by them in an interpleader action instituted by American Bank of Texas on October 10, 2006 in the District Court of Travis County, Texas, 201st Judicial District Court, under Cause No. D-GN-06003885. There is a fourth cause of action requesting damages and attorney's fees against Fire Eagle for an alleged breach of contract, to-wit: failure to release the certificate of deposit and the guarantees after the debt was paid.

To all of that Fire Eagle filed its Rule 12(b) Motion to Dismiss on April 11, 2008. Such Motion seeks dismissal on the following bases:

1. Motion to Withdraw the Reference. In a rather unusual procedural tactic, Fire Eagle filed by separate pleading a Motion to Withdraw the Reference of this adversary proceeding to the

United States District Court for the Western District of Texas. The instant Motion seeks dismissal solely on the basis that it has filed a Motion to Withdraw the Reference. It is beyond this Court's ability to engage in rational thought as to why this adversary proceeding should be dismissed simply because Fire Eagle contemporaneously filed a Motion for the District Court to Withdraw the Reference of this adversary proceeding. Nevertheless, the District Court denied the Motion to Withdraw the Reference which denial was docketed in this adversary proceeding on June 16, 2008. Accordingly, to the extent the instant Motion to Dismiss asks for dismissal of this adversary because it filed a Motion to Withdraw the Reference, the Motion must be denied.

    2.   Lack of Subject Matter Jurisdiction/Abstention.

    3.   Improper Venue.

    4.   Failure to State a Claim upon which Relief can be granted and alternatively

    5.   Motion to Sever

A hearing was held on all these Motions on August 25, 2008.

## Statement of Applicable Law

It is without dispute that in determining a motion under Rule 12(b) of the Rules of Federal Procedure, the Court must take the facts as pled in the complaint as true. *Spivey v. Robertson,* 197 F.3d 772, 774 (5th Cir. 1999)

**Facts**

The following factual allegations are taken from the Complaint initiating this adversary proceeding and must be taken as true and relied upon by the Court in the determination of Fire Eagle's Motion to Dismiss. The following are those which the Court finds relevant to determining the merits of said Motion.

For the purposes of identification, the parties referred to are Spillman Investment Group, Ltd. ("SIG"), Steven W. Gurasich, Jr. ("Gurasich"), Donald G. Walden ("Walden"), Robert H. West ("West"), Morton L. Topfer, Richard Topfer, Alan Topfer (collectively the "Topfers"), American Bank of Texas ("ABT"), Ronald E. Ingalls ("Chapter 7 Trustee") and Fire Eagle LLC ("Fire Eagle").

The Complaint states in relevant part as follows:

1. "This adversary arises pursuant to the Court's Order Denying Fire Eagle's Rule 12(b)(3) Motion to Dismiss for Improper Venue and Granting Fire Eagle's Request to Invoke Adversary Rules docketed on January 14, 2008 as docket entry 508 in the above numbered and captioned bankruptcy case now pending before the Court ("Bankruptcy Case") and pursuant to 28 U.S.C. § 2201-2202." (Remainder of the paragraph omitted).

2. "The Court has previously ruled that the causes of action set forth in this adversary arise in and relate to the bankruptcy case." (Remainder of paragraph omitted).

3. "ABT, as Senior Lender, and Fire Eagle, as Junior Lender,

5

entered into that certain Inter-creditor Agreement ("Inter-creditor Agreement") October 29, 2001. The Inter-Creditor Agreement defined the relationship and creditor rights of ABT, which was to provide a loan for $7,200,000.00 ("the Senior Loan") to Spillman Development Group, Ltd. ("SDG" or "Debtor") and Fire Eagle which was to provide a loan of $4,100,000.00 ("the Junior Loan") to SDG all for the development of an 18-hole golf course, clubhouse and related facilities and amenities in Bee Cave, Texas located on property more particularly described in The Inter-creditor Agreement. A true and correct copy of the Inter-Creditor Agreement is attached hereto as Exhibit P-1 and incorporated herein by reference for all purposes."

    4. So as to avoid restating the Complaint verbatim, the Court takes as true for the purposes of ruling on the instant Motion and incorporates herein by reference the statements and allegations contained in the following paragraphs of the original Complaint: 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45 and 46. Simply stated, those paragraphs establish that ABT loaned $7,200,000.00 to the Debtor secured by a first lien against virtually all the assets of the Debtor; Fire Eagle loaned $4,100,000.00 to the Debtor secured by a second and inferior lien on virtually all the assets owned by the Debtor; SIG, as of the Petition date, was the owner of a certificate of deposit in the amount of $1,200,000.00 that was pledged against the first lien

indebtedness of ABT; Gurasich, Walden, West, and the Topfers had guaranteed certain differing amounts of the first lien indebtedness to ABT; and Fire Eagle held no guarantees of its second lien indebtedness from Gurasich, Walden, West or the Topfers, and held no certificate of deposit from SIG to secure its second lien indebtedness. Such paragraphs also establish that the debts became in default and the Debtor filed Chapter 11 to avoid foreclosure.

5. Fire Eagle purchased the first lien indebtedness and all its collateral position from ABT effective October 6, 2006. Such fact is not in dispute. It was agreed as between ABT and Fire Eagle that the outstanding indebtedness on the first note held by ABT as of September 26, 2006 was $8,174,585.70 and that the outstanding indebtedness on the second note as of September 26, 2006 was $949,032.05. Fire Eagle paid those sums to ABT plus accrued interest on the first note of $1,896.70 per day and on the second note of $225.50 per day as of the date of the purchase. Therefore, we know for certain that Fire Eagle paid ABT $9,123,618.60 plus accrued interest from September 26, 2006 until the date of closing (the effective date of the sale is October 6, 2006), plus additional attorney's fees and expenses incurred with regard thereto to purchase the first lien debt and all that secured it.

6. On October 10, 2006, ABT filed a Petition In Interpleader, designated Cause No. D-1-GN-006003885 in the District Court of Travis County, Texas, 201st Judicial District ("Interpleader

Lawsuit"). In the Interpleader Lawsuit, ABT alleged that both SIG and Fire Eagle claimed SIG's certificate of deposit and its proceeds and asked the District Court to release and discharge ABT from any further obligation with regard to the SIG certificate of deposit. See paragraph 56 of the Complaint.

7. Both Fire Eagle and the Debtor's proposed plans of reorganization were denied confirmation and the Court established a sale procedure pursuant to which virtually all of the assets of the Debtor, save and except Chapter 5 causes of action, would be sold. Fire Eagle was allowed to credit bid the debt it held, specifically the first lien debt it had recently purchased from ABT first and then the second lien indebtedness which it had held from the beginning. See paragraphs 57, 58 and 59 of the Complaint.

8. On November 30, 2006, the Court held the sale in open court. At the hearing the Court accepted as the winning bid that of Fire Eagle, a credit bid of $9,300,000.00. The immediately preceding bid was a bid by an entity that had been formed by certain of the insiders of the Debtor who are also guarantors of the first lien indebtedness to ABT then held by Fire Eagle. That bid was for cash and in the amount of $9,200,000.00. Accordingly, it is a known fact that had Fire Eagle not bid $9,300,000.00 as a credit bid against the secured indebtednesses it held, it would have received cash in the amount of $9,200,000.00 which it would have had to apply first to the first lien indebtedness it had purchased from ABT and then against its second lien indebtedness to

the extent of any excess proceeds.

9. In addition, in October 2006, after it had purchased the first lien indebtedness of ABT, and pursuant to an Order previously entered authorizing payment to ABT of cash collateral in the amount of $500,000.00, Fire Eagle received a payment from the Debtor of $500,000.00 in cash collateral that could only have been applied against the first lien indebtedness it had purchased from ABT. This is because it was paid pursuant to a prior Order of this Court that required such payment to be applied against the principal of the first lien indebtedness it then held. Even though the payment was made after Fire Eagle bought the first lien debt from ABT, it nevertheless must be applied in accordance with the Court Order authorizing its payment.

10. Therefore, taking all matters pled in the Complaint as true for the purposes of the Motion to Dismiss, it has been established that Fire Eagle purchased the first lien indebtedness from ABT effective October 6, 2006 for the amount of $9,123,618.60, plus accrued interest and attorney fees thereon from September 30, 2006 to date of purchase. We also know that interest continued to accrue on the first lien indebtedness until the auction sale in open Court on November 30, 2006. We know the per diem for the accrual of such interest totaled a minimum of $2,122.20 per day [60 days to November 30, 2006 = $127,332.00.] Adding this amount to the amount of the debt as of September 30, 2006, we get a number of $9,250,950.60. Some additional attorneys fees must no doubt be

9

added to that sum [such amount is currently unknown]. We also know that Fire Eagle received $500,000.00 in cash collateral which according to then existing Court orders had to be applied against the first lien indebtedness it had purchased.

11. Therefore, we know from the Complaint, and we must take it as true, that as of November 30, 2006, Fire Eagle was required to credit the first lien indebtedness with a total of $9,800,000.00 with any overage going against its second lien debt.

12. On virtually the same facts, this Court on September 27, 2007, entered its Amended Final Order determining that Fire Eagle had no deficiency claim against this estate under the first lien indebtedness it had obtained from ABT.

13. The substantive question posed by this adversary proceeding is whether there is some magical way the first lien indebtedness of ABT acquired by Fire Eagle somehow still exists; and, if so, in what amount; and if it can once again be paid by requiring application of the $1.2 million certificate of deposit which SIG claims it owns and by requiring performance of guarantees of the first lien indebtedness by Gurasich, Walden, West and the Topfers.

**Issues**

**Issue 1: Does this Court have subject matter jurisdiction and if so, should it abstain.**

The Bankruptcy Courts are courts of limited jurisdiction as

10

the scope of their jurisdiction is defined by statute. *In re Paso del Norte Co.,* 75 F.2d 421, 423-424 (5th Cir. 1985). The relevant statute grants to the United States District Courts "original but not exclusive jurisdiction of all civil proceedings arising under Title 11, or arising in or related to cases under Title 11." 11 U.S.C. § 1334(b). Those civil proceedings arising in a case under Title 11 or arising under Title 11 have long been recognized as core proceedings. A non-exclusive list of the types of civil proceedings the statute defines as core proceedings is set forth at 28 U.S.C. § 157(b)(2). In addition to core proceedings, bankruptcy courts may hear civil proceedings "related to" a case under Title 11 under certain prescribed procedures. The Fifth Circuit Court of Appeals has adopted the following definition of "related to" citing cases from the 3rd, 8th, and 6th Circuits as authority: "Whether the outcome of that proceeding could *conceivably* have any affect on the estate being administered in bankruptcy". *Matter of Wood,* 825 F.2d 90, 93 (5th Cir. 1987).

The Fifth Circuit Court of Appeals has applied this standard in subsequent cases. One of those cases, ironically, emanated from this very bankruptcy court. A judgment creditor of the debtor sued various of the debtor's friends, relatives and business associates for damages asserting tortuous interference with its attempts to collect the judgment, fraud, and other various causes of action. The suit had been filed in the United States District Court for the Western District of Texas. The district court referred the matter

11

to the bankruptcy court in which the judgment debtor had filed for Chapter 7 bankruptcy. The bankruptcy court tried the lawsuit and found in favor of the defendants. On appeal, the judgment creditor alleged that the bankruptcy court did not have related to jurisdiction because 1)successful prosecution of its claims against the defendants at bar would not fully pay or extinguish its judgment against the judgment debtor and 2)that if it successfully collected any amount from the defendants at bar, since they would be legally subrogated to the judgment creditors' rights against judgment debtor, the same amount of claims would be owed in the bankruptcy estate and there would be no possible effect on the estate. Therefore, the bankruptcy court could not have related to jurisdiction.

The Circuit disagreed saying:

> Assuming that R & B should successfully collect from the defendants the judgment it holds against **Canion** and assuming that the defendants' fraudulent conduct would preclude legal subrogation, the total amounts due against **Canion's** bankruptcy estate would be decreased. This decrease would inure to the benefit of all unsecured creditors each of whom would then share in disbursement that would otherwise have been paid to R & B.

*In re Canion,* 196 F.3rd 579, 586 (5th Cir. 1999).

But the Circuit Court did not stop there. It went on:

> Courts in other circuits that have faced this question have held that a claim between two non-debtors that will potentially reduce the **bankruptcy** estate's liabilities produces an effect on the estate sufficient to confer 'related to' jurisdiction. We note that at the time the district court referred this proceeding to the **bankruptcy** court the sequence of events that would reduce the claims against **Canion's bankruptcy** estate was not certain to

12

> occur; however, the law is well established in this Circuit as in others, that, when testing 'related to' jurisdiction, an effect is not required to a certainty. Rather, jurisdiction will attach on a finding of any *conceivable* effect.

*Id. at 586-587.*

Fire Eagle argues that since the guarantor/Plaintiffs had waived subrogation in their contractual guaranty agreements, this is dispositive of the jurisdiction issue as there can be no effect on the estate out of any potential collection on those guarantees by Fire Eagle. But, this is exactly what the Fifth Circuit in the *Canion* case said would result in a potential conceivable effect. If Fire Eagle is successful in collecting against the guarantor/Plaintiffs and against the certificate of deposit alleged to be owned by SIG, it will result in more money being paid to other creditors since Fire Eagle's deficiency claim would of necessity end up being less than it currently is and since the guarantor/Plaintiffs have contractually waived their rights to subrogation.

At the very least, this Court has "related to" jurisdiction of the dispute between Fire Eagle and the guarantor/Plaintiffs and SIG as to the liability of the certificate of deposit owned by SIG and of the guarantees of the guarantor/Plaintiffs upon the first lien indebtedness.

That, however, is not the end of the inquiry. The Fifth Circuit Court of Appeals has addressed this type of issue in

another case. In the case of *In re Stonebridge Technologies, Inc.*, 430 F.3rd 260 (5th Cir. 2005), the trustee of a liquidating trust under debtor's confirmed chapter 11 plan brought causes of action against the debtor's lessor for that lessor's alleged breach of contract and negligent misrepresentations in drawing on a letter of credit that had been issued to secure the debtor's performance under the lease. The Court easily found that the breach of contract claims owned by the estate were something over which the bankruptcy court had related to jurisdiction. *In re Stonebridge Technologies, Inc.* at 266.

The negligent misrepresentation claims brought by the trustee were more problematic as those claims had been assigned to the trustee by the bank. The Fifth Circuit said:

> ..... At first glance, one might conclude that because the estate stands in the shoes of the Bank, and the bankruptcy court had no jurisdiction to litigate the Bank's claim against EOP, the bankruptcy court could not assert jurisdiction over the claim just because the Bank's cause of action had been assigned to the estate. Finding that assignment alone creates bankruptcy jurisdiction to litigate a third party's cause of action defeats the limited scope of bankruptcy jurisdiction. Upon closer review, however, additional effects upon the estate are evident: a claim by the Bank against EOP affects the need for the Bank to seek reimbursement from Stonebridge's bankruptcy estate. EOP's draw on the Letter of Credit triggered Stonebridge's contractual liability to reimburse the Bank for the draw on the Letter of Credit. Here, the Bank also sought damages against EOP for negligent misrepresentation. If the Bank is successful against EOP on its negligent misrepresentation claims, the need for reimbursement from Stonebridge's estate is alleviated. This effect on the estate is not altered because the Trustee exchanged reimbursement to the Bank for an assignment of the Bank's negligent misrepresentation claims. The negligent

14

> misrepresentation claims therefore fall within the general bankruptcy jurisdiction.

*Id.* at 266.

The Fifth Circuit went on to conclude that these were core claims stating:

> On the other hand, claims between third parties, such as the negligent misrepresentation claims, are typically considered within the bankruptcy court's non-core jurisdiction. In this case, however, the negligent misrepresentation claims <u>are dependent upon interpretation of rights created in bankruptcy, specifically those rights associated with § 502(b)(6) and § 365(a)</u>. Although grafting of bankruptcy terms onto the interpretation of a Lease does not automatically result in core jurisdiction, as a practical matter, these particular negligent misrepresentation claims are substantially related to the interpretation of rights created in bankruptcy. In other words, the substantive rights asserted by the Trustee could only <u>arise in the context of a bankruptcy case. Because these claims are dependent upon the rights created in bankruptcy and would not exist but for the filing of Stonebridge's bankruptcy, we find these claims should be included in the bankruptcy court's core jurisdiction</u>. (Emphasis added).

(Citation omitted). *Id.* at 267.

In the case at bar, the claims made by SIG and the guarantor/plaintiffs all of whom are parties in interest in the primary bankruptcy case of Spillman Development Group, Ltd. could only be asserted in the context of a bankruptcy case. Here, Fire Eagle used its rights under 11 U.S.C. § 363(k) to purchase property upon which it held a first lien indebtedness (purchased from ABT) and a second lien indebtedness. The Court told the parties in open court before the sale concluded that if successful, Fire Eagle's credit bid would be applied first against the first lien

15

indebtedness and then against the second lien indebtedness. The issue between Fire Eagle and Plaintiffs is whether, by reason of Fire Eagle's § 363(k) credit bid (and prior payment of $500,000.00 in cash collateral which by Court Order had to be applied against the first lien indebtedness) the first lien indebtedness was fully paid and the certificate of deposit alleged to be owned by SIG should be returned to it and the guarantees of the guarantor/Plaintiffs should be returned to them. These claims are dependent upon the rights created in bankruptcy and would not exist but for the filing of Spillman Development Group, Ltd.'s bnnkruptcy.

The conclusion can only be that this issue is not only a related to matter, it is a core matter.

The Motion to Dismiss for Lack of Jurisdiction is, therefore, denied.

**Improper Venue**

Fire Eagle claims this matter is subject to the contractual Venue Selection Clause contained in the Limited Guarantee Agreements and the Amended and Restated Limited Guarantee Agreements at paragraph 5.3 which Fire Eagle argues establishes Grayson County, Texas as the proper venue.

While that may be true absent bankruptcy, it is not true since this is a core proceeding over which the Bankruptcy Court has core jurisdiction.

The Motion to Dismiss for Improper Venue is, therefore, denied.

**Failure to State a Claim upon which Relief can be Granted**

As stated above, the Court must consider all facts pled in the Complaint as true in determining a Rule 12(b)(6) motion. The facts alleged in the Plaintiffs' Complaint, when taken as true, establish that Fire Eagle received payment of $500,000.00 in cash collateral which this Court's Order required to be applied against the first lien indebtedness it acquired from ABT. It also establishes that Fire Eagle purchased property of this estate which was encumbered by the first lien indebtedness (as well as the second lien indebtedness) held by Fire Eagle for the amount of $9,300,000.00, which credit bid had to be applied first against the first lien indebtedness and then to the second lien indebtedness. That total credit due of $9,800,000.00, according to the Complaint, exceeds the amount of the first lien indebtedness. If true as pled, the effect is that there is no first lien indebtedness remaining which is still guaranteed by the guarantor/Plaintiffs or against which the certificate of deposit of SIG can be applied. As such, the Complaint clearly states a cause of action upon which relief can be granted.

The Motion to Dismiss for Failure to State a Claim upon which Relief can be Granted is, therefore, denied.

**Motion to Sever**

Ingalls, as Trustee, has intervened in this proceeding claiming that the certificate of deposit allegedly owned by SIG is, in fact, property of the estate and should be turned over to it as opposed to SIG. This is a matter over which the Court has jurisdiction, the subject matter of which is also the subject matter of the dispute between SIG and Fire Eagle. There is no reason to sever this matter at this time.

The Motion to Sever is, therefore, denied.

An Order of even date herewith will be entered.

###