

**SIGNED this 29th day of October, 2010.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 05-14415-CAG |
| | § | |
| SPILLMAN DEVELOPMENT GROUP, LTD., | § § | CHAPTER 7 |
| Debtor. | § | |

| | | |
|---|---|---|
| SPILLMAN INVESTMENT GROUP, LTD., STEPHEN W. GURASICH, JR., DONALD C. WALDEN, ROBERT H. WEST, MORTON L. TOPFER, ALAN TOPFER, AND RICHARD TOPFER, Plaintiffs, | § § § § § § | |
| | § | ADV. NO. 08-01018 |
| v. | § § | |
| AMERICAN BANK OF TEXAS, RONALD E. INGALLS, TRUSTEE, AND FIRE EAGLE, LLC, Defendants. | § § § § | |

| | | |
|---|---|---|
| FIRE EAGLE, LLC, Plaintiff, | § § | |
| | § | CONSOLIDATED WITH |
| v. | § § | ADV. NO. 09-01059- CAG |
| RICHARD L. BISCHOFF, Defendant. | § § | |

## **ORDER DENYING FIRE EAGLE'S MOTION FOR STAY PENDING APPEAL**

Before the Court is Fire Eagle's Motion for Stay Pending Appeal (docket #337). On June 15, 2010, Plaintiff Spillman Investment Group, Ltd. ("SIG") filed its Second Motion to Direct ABT to Disburse Funds (docket #286). On August 12, 2010, this Court entered an Order Granting SIG's Second Motion to Direct ABT to Disburse Funds (docket # 324) which directed American Bank of Texas ("ABT") to disburse the balance of the certificate of deposit discussed below. Fire Eagle's Motion for Stay Pending Appeal seeks to stay enforcement of this judgment during the pendency of the various appeals.

### **BACKGROUND**

The background of this case is well established, but a brief summary of the facts to date is necessary. ABT loaned Spillman Development Group ("SDG"), the Debtor in the main bankruptcy case (case number 05-14415), $7,200,000 and later $900,000, secured by virtually all the assets owned by SDG. Fire Eagle loaned $4,100,000 to the Debtor secured by a second and inferior lien on virtually all of SDG's assets. On the petition date, August 8, 2005, SIG owned a certificate of deposit in the amount of $1,200,000 that was pledged against the first lien indebtedness of ABT (the "CD"). On October 6, 2006, Fire Eagle purchased the first lien indebtedness and all its collateral position from ABT. ABT and Fire Eagle agreed that the outstanding indebtedness on the first note held by ABT as of September 26, 2006 was $8,174,585.70, and that the outstanding indebtedness on the second note (as of September 26, 2006) was $949,032.05. Fire Eagle paid those sums to ABT, plus accrued interest on the first note of $1,896.70 per day, and on the second note of $225.50 per day, as of the date of purchase. The Court therefore knows for certain that Fire Eagle paid ABT $9,123,618.60, plus accrued interest and attorney fees from September 26, 2006 until the date of closing.

On November 30, 2006, the Court held the sale in open court. At the hearing, the Court accepted a credit bid of $9,300,000 by Fire Eagle. The immediately preceding bid was a bid by an entity that had been formed by certain of the insiders of the Debtor, who are some of the guarantors of the first lien indebtedness to ABT then held by Fire Eagle (as a result of Fire Eagle purchasing the indebtedness). That bid was for cash and in the amount of $9,200,000. Accordingly, as this Court has said several times, it is an indisputable fact that had Fire Eagle not bid $9,300,000 as a credit bid against their secured indebtedness, it would have received cash in the amount of $9,200,000, which it would have had to apply first to the first lien indebtedness it had purchased from ABT, and then against its second lien indebtedness to the extent of any excess proceeds. In addition, in October 2006, after it had purchased the first lien indebtedness of ABT, and pursuant to an Order previously entered authorizing payment to ABT of cash collateral in the amount of $500,000, Fire Eagle received a payment from the Debtor of $500,000 in cash collateral that could only have been applied against the first lien indebtedness Fire Eagle had purchased from ABT. This is because the money was paid pursuant to a prior Order of this Court that required such payment to be applied against the principal of the first lien indebtedness Fire Eagle then held. Even though the payment was made after Fire Eagle bought the first lien debt from ABT, the money nevertheless was required to be applied in accordance with the Court Order authorizing its payment.

Therefore, it is without genuine dispute that Fire Eagle purchased the first lien indebtedness from ABT effective October 6, 2006, for the amount of $9,123,618.60, plus accrued interest and attorney fees thereon from September 26, 2006 to date of purchase. There is no dispute that interest continued to accrue on the first lien indebtedness until the auction sale in open Court on November 30, 2006, and that the per diem for the accrual of such interest totaled a

minimum of $2,122.20 per day (estimate 60 days to November 30, 2006 = $127,332.00). This sum, plus the amount of the debt as of November 30, 2006, results in a total of $9,250,950.60. Additional attorneys' fees must be added to that sum (such amount is currently unknown). There is also no dispute that Fire Eagle received $500,000 in cash collateral, which according to then-existing Court orders, had to be applied against the first lien indebtedness it had purchased.

Therefore, as of November 30, 2006, Fire Eagle was required to credit the Senior Loan with a total of $9,800,000 ($500,000 cash collateral payment plus $9,300,000 credit bid), with the overage of approximately $500,000 applied toward its second lien debt.

On virtually the same facts, this Court entered its Amended Final Order determining that Fire Eagle had no deficiency claim against this estate under the first lien indebtedness it had obtained from ABT (docket #469 in case 05-14415). That Order made the determination that the debt represented by the First Lien Debt had been fully extinguished as to the Debtor's estate by virtue of Fire Eagle's credit bid. These facts were also the basis to find that all guarantees and the CD at issue which secured the first lien indebtedness, were released (*see* docket # 113, 279 and 280).

## ISSUE

The issue now before the Court is whether to grant Fire Eagle's Motion for Stay Pending Appeal (docket # 337). Both sides submitted briefs in support of their position and a hearing was held on October 21, 2010.

## LEGAL ANALYSIS

The Fifth Circuit has articulated a four prong test for determining whether a court should grant a stay pending appeal. *See* **Arnold v. Garlock**, 278 F.3d 426, 438-39 (5th Cir. 2001); **In re First South Sav. Ass'n**, 820 F.2d 700, 709 (5th Cir. 1987). The factors are:

4

1. Whether the Movant has made a showing of likelihood of success on the merits;
2. Whether the Movant has made a showing of irreparable injury if the stay is not granted;
3. Whether the granting of the stay would substantially harm other parties; and
4. Whether the granting of the stay would serve the public interest.

*Id.* The party seeking the stay bears the burden of establishing each of these factors. *Ruiz v. Estelle*, 666 F.2d 854, 856 (5th Cir. 1982) (internal citations omitted). The Court will discuss each of these factors.

1. Factor One – Likelihood of Success

In arguing the first factor, both sides discuss the burden the movant must overcome: "The movant need not always show a 'probability' of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981). That case then goes on to discuss how the "balance of the equities" can play into the overall determination: "Of course, if the balance of the equities (i.e. consideration of the other three factors) is not heavily tilted in the movant's favor, the movant must then make a more substantial showing of likelihood of success on the merits in order to obtain a stay pending appeal." *Id.* at 565-66. Because the burden on the movant can increase or decrease depending on the other three factors, this Court will return to the first factor after a discussion of the other three factors.

2. Factor Two – Irreparable Harm

Fire Eagle claims that it will suffer irreparable harm if the stay is not granted. Fire Eagle has argued, and continues to argue, that its credit bid for Debtor's assets in excess of the amount of the first lien somehow created a deficiency claim which is collateralized by the CD. The

5

Court's view on this deficiency claim was previously expressed in the Memorandum Opinion issued on January 29, 2009 (docket #113). The issue here is whether Fire Eagle will suffer irreparable harm if SIG is allowed to disburse the CD. Fire Eagle alleges that disbursement of the CD will leave Fire Eagle without its collateral while the existence of the guaranteed debt continues to be argued on appeal. Fire Eagle argues that "if this Stay Pending Appeal is not granted, and Fire Eagle ultimately wins on appeal, there will be the great hardship of trying to get back the CD which has been disbursed to the non-debtor third party SIG, which has an unknown financial status" (docket #337).

An injury is irreparable only if it cannot be undone through monetary remedies. ***Spiegel v. City of Houston***, 636 F.2d 997, 1001 (5th Cir. 1981) (citing ***Parks v. Dunlop***, 517 F.2d 785, 787 (5th Cir. 1975)). The collateral at issue is a certificate of deposit. A "certificate of deposit" is defined as "1. A banker's certificate acknowledging the receipt of money and promising to repay the depositor. 2. A bank document showing the existence of a time deposit, usu. one that pays interest." BLACK'S LAW DICTIONARY 256 (9th ed. 2009). A "time deposit" is defined as "[a] bank deposit that is to remain for a specified period or for which notice must be given to the bank before withdrawal." *Id.* at 504. In other words, a certificate of deposit is simply a document which shows the existence of a deposit of money in a bank. The collateral is neither rare nor unique. If the CD were disbursed and Fire Eagle were to win on appeal, Fire Eagle would not be damaged if the original CD was not returned to it. Fire Eagle would have a claim for the $1.2 million represented by the CD. Fire Eagle argues that SIG is an entity with an unknown financial status. At hearing, evidence was presented under seal showing the financial status of SIG. The Court finds this evidence convincing, and determines that if Fire Eagle prevails, SIG will have sufficient assets to pay the amount of the CD to Fire Eagle.

6

For these reasons, this Court does not find that Fire Eagle has made a convincing showing that it would suffer irreparable harm without the imposition of the stay pending appeal.

3. Factor Three – Substantial Harm to Other Parties

Fire Eagle argues that SIG will not be substantially harmed if the stay is granted. Fire Eagle argues that the stay will merely preserve the status quo until the appeal is resolved and that this will not cause new or substantial harm to SIG.

SIG argues that it has been deprived of the use of the funds deposited in the CD for nearly four years, since the November 30, 2006 sale. SIG acknowledges it is earning interest on the CD, but say that rate is *de minimus* when compared with the rate of return they could be earning through other investments.

While the status quo may not cause *new* harm to SIG, the status quo does continue to cause substantial harm to SIG. SIG has been foreclosed from the use of $1.2 million for nearly four years while this case is litigated. Based on this Court's understanding, the CD is currently earning interest at 3.25%. While arguably more than *de minimus* as the Plaintiffs claim, a stay pending appeal would continue to force SIG to use its capital in a way SIG does not believe is its highest and best use. Holders of cash should be allowed to use it as they see fit. It is a basic tenet of economics that a dollar today is worth more than a dollar tomorrow. In order to compensate a holder of money for giving up present consumption, banks and other savings institutions offer interest. While the CD at issue is interest bearing, SIG did not make the decision to leave the money in the account indefinitely and forego other opportunities while awaiting the result of the various appeals filed by Fire Eagle. This Court believes that to continue to tie this money up in the CD, forcing SIG to forego the use of these funds, does cause a substantial harm to SIG and Fire Eagle has not met its burden to prove otherwise.

7

    4.    <u>Factor Four: Public Interest</u>

Fire Eagle argues that the stay serves the public interest because "the public is best served when the principal concern focuses on an attempt to neither under nor overwhelm the administration of the bankruptcy case during the appellate process" (docket #337, *citing **In re Gleasman***, 111 B.R. 595, 599 (Bankr. W.D.Tex. 1990)). The Court is not entirely sure what Fire Eagle is trying to assert by citing that case. The case states: "Bankruptcy Rule 8005 is by its design a flexible tool which permits a bankruptcy court to uniquely tailor relief to the circumstances of the case, so that the appellate process will neither undo nor overwhelm the administration of the bankruptcy case." ***In re Gleasman***, 111 B.R. at 599. It appears that Fire Eagle is citing a case that actually undermines its position. One of the principal concerns of Fire Eagle's appeal is that its credit bid in excess of the first lien somehow resulted in a deficiency claim, and therefore the CD remains Fire Eagle's collateral. To allow the stay would prevent SIG from exercising their rights to the CD, keeping these parties involved in the bankruptcy case, and would certainly undo the administration of this case.

Fire Eagle also argues that not granting the stay "will fail to serve the public interest by allowing a lender's collateral to be disbursed while the debt is still in a state of uncertainty" (docket #337). Fire Eagle claims there has not been a final and non-appealable order to release the collateral. The state of the collateral is certain to all parties involved, except for Fire Eagle. There are orders regarding the state of the collateral (*see* docket #113). The only reason these are not final is due to Fire Eagle's appeals.

Fire Eagle additionally argues that "the public interest is satisfied once Fire Eagle shows a substantial case with a serious legal question and a weight in favor of granting the stay" (docket #337). Fire Eagle cites several cases, including one only cited by name. That case is an

8

unpublished case which states, after making a determination that one of the appellants' many appeals presents a potentially valid argument, that "[t]he public interest favors having legal matters decided on the merits." ***Bossart v. Havis***, 2008 WL 656321 (S.D.Tex. March 6, 2008). The issues Fire Eagle presents on appeal have all been decided on the merits. If anything, Fire Eagle's arguments for the stay pending appeal undermine its position on appeal, as several of its appeals seek to decide this matter on venue, jurisdiction, and procedural grounds. This Court's determination on Fire Eagle's likelihood of success on the merits will be addressed below; however, this Court does not find that Fire Eagle has met its burden in showing that the public interest would be served by granting the stay pending appeal.

As an aside, this Court believes that Fire Eagle's appeal hurts the public interest. Fire Eagle credit bid its debt in order to acquire the Debtor's golf course. A credit bid has the same effect as a cash bid. ***Lexington Coal Co., LLC v. Miller, Buckfire, Lewis Ying & Co., LLC (In re HNRC Dissolution Co.)***, 340 B.R. 818, 824-25 (Bankr.E.D.Ky.2006); see also ***McClure v. Casa Claire Apartments, Ltd.***, 560 S.W.2d 457, 461 (Tex.Civ.App.-Beaumont 1977 no writ). Fire Eagle now claims that the golf course is worth substantially less than its bid, and therefore, Fire Eagle is entitled to a deficiency claim. To allow a buyer to later decide the assets purchased are not worth the price paid would not only undermine the bidding procedures common in bankruptcy, but would require a Court to hold that a buyer should be allowed to receive a portion of his money back if the property is later determined to be worth less than a buyer agreed to pay. Fire Eagle's position ultimately requires a court to determine that there should be no finality in contract purchase prices.

5. <u>Balance of the Equities & Factor One: Likelihood of Success on the Merits</u>

The issues to be presented on appeal are whether this Court erred in

>1) denying Fire Eagle's Motion to Dismiss the Adversary Proceeding for Lack of Subject Matter Jurisdiction, 2) denying Fire Eagle's Motion to Dismiss the Adversary Proceeding for Improper Venue, 3) denying Fire Eagle's Motion to Dismiss the Adversary Proceeding for Failure to State a Claim Upon Which Relief can be Granted, 4) denying Fire Eagle's Motion for Summary Judgment in the Adversary Proceeding, 5) granting the Plaintiff's Motion for Summary Judgment in the Adversary Proceeding, 6) failing to permit discovery sufficient to respond to Plaintiff's Motion to Summary Judgment, 7) denying Fire Eagle's Motion for Reconsideration of the denial of Fire Eagle's Summary Judgment Motion and granting the Plaintiff's Summary Judgment Motion, 8) denying Fire Eagle's Motion to Compel, and 9) providing a third party release for non-debtors (docket #337).

As discussed above, "if the balance of the equities (i.e. consideration of the other three factors) is not heavily tilted in the movant's favor, the movant must then make a more substantial showing of likelihood of success on the merits in order to obtain a stay pending appeal." ***Ruiz v. Estelle***, 650 F.2d at 565-66. From the above discussion, factors Two, Three, and Four are not "heavily tilted in the movant's favor," to say the least. While not fatal to the success of Fire Eagle's motion, its burden here will be higher than merely presenting a substantial case on the merits.

In arguing its position, Fire Eagle cites a case and appears to misstate the holding. Fire Eagle states that "[w]hen the issues on appeal are primarily regarding questions of law and its application, or when the law has not been definitively addressed by a higher court, the movant has an easier time satisfying these criteria" (docket #337, citing ***In re Westwood Plaza Apartments***, 150 B.R. 163, 168 (Bankr.E.D. Tex. 1993)). Fire Eagle argues this case stands for the notion that "where the court stated that it did not believe that the movant would succeed on the merits, it nonetheless concluded that this element was satisfied because the issues on appeal were important questions of law as opposed to issues of fact." ***Id.*** The bankruptcy court's precise language in deciding to grant the stay in that case is: "The Fifth Circuit has yet to address

10

this question and the circuits which have are split. Because of the importance of this question to the confirmation of the Plan, the balancing of the equities favor granting a stay." *In re Westwood Plaza Apartments*, 150 B.R. at 168. While it is correct for Fire Eagle to assert that the bankruptcy court in that case felt its initial decision was correct, yet still determined that a stay pending appeal was appropriate, the issue in *Westwood* was one involving a circuit split and no ruling by the Fifth Circuit. *Id.* That is not the case here. The facts of this case are undisputed. The law, despite Fire Eagle's contentions, is also well settled. Therefore, it is unlikely, in this Court's opinion, that any of Fire Eagle's appeals will be successful and that Fire Eagle has not met its heightened burden in light of the other factors.

## CONCLUSION

Fire Eagle is requesting that the Court stay the Order Granting Spillman Investment Group, Ltd.'s Second Motion to Direct ABT to Disburse Funds (docket #286). Fire Eagle's Motion for a Stay Pending Appeal should be denied. Fire Eagle has not satisfied its burden of establishing *any* of the four criteria required for the entry of a stay pending appeal.

Fire Eagle has not proven it will suffer irreparable harm. The collateral at issue is a certificate of deposit in a bank. If those funds are disbursed and Fire Eagle prevails on appeal, the Court is satisfied that SIG has sufficient funds to compensate Fire Eagle. Fire Eagle does not need that specific CD in order to be made whole.

Fire Eagle has not shown that other parties will not suffer substantial harm if the stay is granted. Fire Eagle seeks to continue to control money the Court has determined (on several occasions) belongs to SIG. While not a new harm, preventing SIG from exercising its rights to the CD for an undeterminable time does, in this Court's view, present a substantial harm. At any rate, Fire Eagle has not met its burden.

Fire Eagle has not shown that the issuance of a stay would serve the public interest.

Because Fire Eagle did not meet its burden for these three factors, Fire Eagle was required to show more than a substantial case on the merits to prove a likelihood of success on appeal. Fire Eagle has failed to meet their burden here as well.

After examining the pleadings in this case, the briefs submitted by the parties, and the evidence presented at trial, the Court finds that, for the reasons stated above, Fire Eagle's Motion for Stay Pending Appeal should be denied.

IT IS THEREFORE ORDERED that Fire Eagle's Motion for Stay Pending Appeal is DENIED.

# # #